Daniels, J.
By the judgment which has been recovered the defendant has been adjudged liable to account to the plaintiff for the proceeds of real estate owned by her and conveyed to and sold by him. This real estate was conveyed to the plaintiff by her father, Orison Blunt, during his life time. He was indebted upon notes made for his accommodation and indorsed by him, in the sum of fourteen thousand dollars, at the time of his decease. Nine thousand of the notes were held by the Shoe and Leather Bank, and five thousand by the Hoboken National Bank. Samuel R. Syms, the brother of the defendant, was liable as a party to these notes for their payment, and he contemplated the prosecution of an action against the plaintiff to set aside the conveyances of the land made to her, and to render the property liable for the payment 'of these debts. The suit proceeded no further than the filing of a notice of its pendency at the time when the conveyances of the property were made to the defendant. It was then ascertained that the notes could be compromised for the sum of seven thousand dollars, and the leading object of the conveyances to the defendant was to secure this compromise by him and protect him for the amount of the seven thousand dollars to be paid for that purpose. The debts were compromised in this manner, and out of the proceeds of the property the defendant re-imbursed himself the money advanced, together with what was paid by bim *457 for taxes and assessments and other charges against the property. The right of the plaintiff to the residue of the proceeds of the sale of the property after re-imbursing’ the defendant was not denied on his part, but he claimed to be entitled to the rents and profits received from the property between the time when the conveyances were made to Mm and the times of the sales. The conveyances were made m September, 1879, and the sales took place in November and December, 1883. During this interval the defendant received by way of rents the sum of $14,749.94. His alleged right to retain the rents for his own use and benefit depended upon an agreement executed for him by Ms attorneys on the 6th of November, 1879, which did not m terms create the obligation on his part to account for the rents of the property. By this agreement it was stipulated that the plaintiff should be paid one hundred dollars a month for Mne months from the 10th of October, 1879, and that a judgment should be assigned to her amounting to the sum of $15,109.65, which had been recovered against the executrix of the estate of Orison Blunt, deceased. It was further stipulated in the agreement that the defendant would pay to the plaintiff the surplus proceeds of the sales of the lands conveyed after the payment of mortgages, Mterest, taxes, assessments,' insurance, repairs, and about seven thousand dollars to be paid for the compromise of the notes. But it was proved upon the trial that this agreement had not been delivered to the plaintiff personally, and did not come to her knowledge until a very short time before the commencement of this action, and it never was accepted by her as the measure or extent of the obligations incurred by the defendant. And proof was received in her behalf upon the trial to establish the terms of the agreement made by the defendant prior to the time when the deeds were executed and delivered, and pursuant to wMch it was stated that they were so executed and delivered.
The proposal to give this evidence, as well as the effect of it after it was given, was resisted on behalf of the defendant on the ground that the complamt conceded the execution and delivery of this mstrument as the measure of the defendant’s obligations to her, but such are not the allegations wMch are contained in the complaint. The making of the agreement is stated in the complamt, and that it was left with an attorney for her, but the statement is further made that it was not delivered to her and that it did not contam the agreement which had been made with her, and that it had omitted, among other thmgs, the important obligation requiring the defendant to account for the rents of the premises. TMs agreement was delivered *458 to 0. B. Hart, an attorney-at-law, through whose agency the plaintiff had been induced to execute and deliver the deeds, but no authority was given to him to make with the defendant, or receive from him, any agreement differing from the stipulations under which she executed the deeds. The evidence was ample to sustain these facts, and the referee found that to be the truth of the case. This evidence was admissible under the allegations contained in the complaint, and it was the duty of the referee to act upon it as he did in determining and declaring the rights and obligations of the parties.
To prove the obligations entered into by the defendant as a partial consideration for the execution and delivery of the deeds, the attorney, Mr.. Hart, was allowed to testify as a witness. But his evidence was objected to for the reason that he was acting as an attorney for the defendant in this business, and what was said between them concerning his action was under section 835 of the Code of Civil Procedure, confidential communications, which he was not as a witness at liberty to disclose. But such, very clearly, was not the nature of the interviews which took place between the defendant and the attorney. What was said by the former to the latter was not communicated in the course of any professional employment, but it was by way of authorizing him to bring about the conveyance of the lands, in order to enable the defendant to be protected in making the compromise of the notes upon which his brother was liable as a party. And the statements which the defendant made to Mr.-Hart for this purpose were admissible to prove the authority of the latter, and the terms on which the conveyances were expected to be obtained. They were no more confidential than they would have been if they had been made to a person who was not in fact an attorney and counselor-at-law, for they were made to him, to employ him in this business, with the view and expectation that what was said would be so far laid before the plaintiff as that should become necessary to induce the making of the conveyances. It was a mere agency and not that of a professional confidential employment.
By the testimony of this witness and that of the plaintiff herself the obligation on the part of the defendant to account for the rents received by him from the property was established in a very satisfactory manner. The probabilities to begin with were against him upon this part of the case. For there was no reason why the plaintiff should have been wining to surrender the rents of the premises without any accountability for them on the part of the defendant. It was not stipulated, or agreed, that anything whatever should be paid upon the judgment which was to be assigned *459 to her, and for the moneys paid to herself he had the right of re-imbursement out of whatever funds should be received by him. The same right extended to such other disbursements as he might make on the security of the conveyances and under the agreement which was in fact made. There was no reason accordingly for any relinquishment of the rents of the property by the plaintiff during the time the title should remain in the defendant. And it is not probable that any expectation at the time entered into the minds of either of the parties, that these rents should be received and retained without any consideration for them by the defendant, But the claim to retain and hold them probably first arose from the omission hi words to insert the obligation to account for them in the written instrument, which however under the circumstances was Hot obligatory upon the plaintiff. Under the evidence which was given the referee was entirely right, in determining as. he did, that the defendant was hable in the accounting which was ordered in the action, to account for the rents of the property which he had received.
When this part of the trial was concluded before the referee, he is stated, in terms, to have directed an interlocutory judgment, requiring an accounting from the defendant on the basis of his liability, supplied by the oral agreement made through his, as wen as her, attorney with the plaintiff. Whether this direction was formally correct it is not necessary to consider, for all that it resulted in was a requirement that the defendant should present his accounts. That was a very proper proceeding, and well established and regulated by the practice in actions of this description, and under it the accounts were rendered upon which a further controversy arose as to the extent of the defendant’s liability. He made charges in his accounts for commissions for collecting and receiving rents himself, in addition to those collected for him through an agency employed for that purpose. And he also claimed commissions upon the amounts expended by him in repairing the property while it was in his possession. So far as he had disbursed moneys in making repairs and paying commissions they were allowed by the referee in the accounting, but upon the amounts collected by himself, and paid out as expenditures for repairs, no commissions were allowed to him. And in that disposition of the case the referee seems to be supported by the settled law, as it is applicable to this class of cases. It is not requisite for the determination of this or any other point in the case, very specifically to declare the nature of the conveyances of the land between the plaintiff and the defendant; for whether they should be held to be mortgages, or a conveyance of the property to *460 be disposed of by Mm and accounted for under the terms of the agreement, his relations and liabilities would be the same; and the rule is a general one that where a mortgagee, or other trustee, manages the estate himself, there no allowance is to be made to him for his services or trouble in the course of that management. Upon this subject it has been said, that “nothing is better established in England than that a trustee can have no allowance, or compensation, for Ms time and trouble in the execution of the trust.” 2 Perry on Trusts (2d ed.), § 904.
While a trustee, and also a mortgagee, is to be reimbursed for all his expenditures lawfully made on account of the estate, his own services have been regarded as gratuitously bestowed, and where he is, in fact, a mortgagee for his own benefit. And such may; bé considered to have been the expectation of these parties, inasmuch as no stipulation was made, or intimation was given, that a compensation or commission, upon these subjects, for the personal services of the defendant would be, at any time, claimed by him. The object of the conveyances was to benefit Ms brother, so far as to relieve him from liability upon these notes; and the defendant was willing to take the business upon himself, as he did, without any stipulated compensation, apparently for the purpose of serving his brother and securing this benefit. Whether a mortgagee, as the defendant may very; well, probably, be designated under the deeds, shall receive commissions upon collections made by himself or expenditures for the improvements - of the property, has been considered in a variety of cases, and they uniformly agree in holding that no such commissions can be legally claimed or allowed. Eaton v. Simonds, 14 Pick., 98; Moore v. Cable, 1 Johns. Ch., 385; 2 Washb. on Real Est. (4th ed.), 234; Breckenridge v. Brook, 2 A. K. Marsh., 335; French v. Baron, 2 Atk., 120; Bonithon v. Hockmore, 1 Vern., 366; Clark v. Robbin, 6 Dana, 350; Benham v. Rowe, 2 Cal., 289; Elma v. Lopes, 25 N. J. Eq., 475.
And for this purpose, without defimtely determming that the defendant was a mortgagee in the possession of tins property, it may very well be assumed that he was; for while there was no stipulation securing to the plaintiff the right to redeem and repossess herself of the property, it is quite clear that she could have done so at any time before the sale by reimbursmg the defendant for his advances; and in this respect this case essentially differs from that of MacCaulay v. Porter (71 N. Y., 173). But in any view which may be taken of the obligations of the defendant, the referee was right in denying him these commissions.
The defendant claimed the sum of $325 for the expenses of a suit brought against Mm by a broker for commissions *461 on a contract for the sale of a portion of the lands. This suit was defended by the defendant evidently in good faith, but it resulted adversely to him, and was finally compromised by the payment of a smaller amount than the recovery, but at an expense to himself of the sum of $100. The aggregate amount paid was $325, and that was disallowed by the referee. In this disallowance he seems to have applied too strict a rule of liability to this part of the accounting. For the principle is quite general holding that “trustees have an inherent equitable right to be re-imbursed all expenses which they reasonably and properly incur in the execution of the trust,'and it is immaterial that there are no provisions for such expenses in the instrument of trust.” 2 Perry on Trusts (2d ed.) § 910. And a mortgagee in the possession of property would clearly be within the same principle. 1 Perry on Trusts (2d ed.) § 243. This amount, therefore, should have been allowed to the defendant upon the accounting, and with interest should be now deducted from the sum required to be paid by him to the plaintiff.
A charge was also made in the sum of $685 for the services of Mr. Hart in the business. Those services were mostly performed in the interviews with the plaintiff through which the conveyances were obtained, the drawing of the conveyances, and the part he took in making the agreement of the 6th of October. But no arrangement was made at any time by which the compensation for these services was to be borne by the plaintiff. They were performed at the instance of the defendant, and probably of his brother, and for the benefit of the latter, and furnished no well-founded claim against the plaintiff. What she was asked to do, and all that was requested of her, was to execute and deliver the deeds as she did, and no suggestion was at any time made that she should become hable for the value of the services of Mr. Hart in the business. This item was rightly rejected upon the accounting.
The referee allowed the defendant interest upon the SÍ, 000 advanced to compromise the notes at the rate of seven per cent, to the 1st of January, 1880, and six per cent, afterwards. This was entirely correct, for as the written agreement made on behalf of the defendant was never accepted, or received as such, by the plaintiff, there was no actual stipulation between the parties for the payment of interest on these advances. And all that the defendant can claim under this state of facts is the rate of interest allowed by law. Sanders v. Lake Shore, etc., Co. (94 N. Y., 641), and that was allowed to him.
The referee was also right in allowing interest against the defendant for the balance fomid in his hands on the 1st of January, 1884, which was after all the real estate had *462 been sold by him. The balance that he had was so much money belonging to the plaintiff, which he was obligated by the transaction itself to pay over to her, and he could not retain this money in his possession, and withhold it from her, and escape liability for legal interest upon it. Adams v. Fort Plain Bank, 36 N. Y., 255, 261.
The defendant did not personally participate in the making or execution of the instrument of the 6th®of October, 1879. At the time it was made he was absent -from the country, and the business was entrusted wholly to the management of other persons. It would, therefore, have been of no service to him if he had been permitted to answer the question, whether there was any omission or mistake, in that paper so far as he knew. If the answer had been given as the question seemed to suggest that it might be, the case by no possibility could have been changed, or the measure of the defendant’s liability in any manner diminished.
No error appears to have intervened in the disposition of the case by the referee, except as to the disallowance of the sum of $325 paid by the defendant in consequence of the suit brought against him by the real estate broker. As to that, it should, with interest from the time when it was paid, be deducted from the amount found due to the plaintiff, and the judgment as modified in that manner should be affirmed without costs to either party.
I concur, Brady, J.